**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**KENNETH A. OLSEN**
**Plaintiff**

**v.** **C.A. No: 03-245 ML**

**TOWN OF WESTERLY;**
**WESTERLY TOWN COUNCIL;**
**RICHARD COMOLLI, PATRICIA DOUGLAS, ANN SCHWER, DIANA AVEDISIAN, JAIME SILVESTRI, NANCY RICHMOND, MARY JANE DIMAIO, MELINDA BOEGLIN and ETSUKO ZUCZEK**
**Defendants**

**PLAINTIFF'S OBJECTION TO**
**MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, KENNETH OLSEN, respectfully files this Objection to the Motion for Summary Judgment filed by the Defendants dated November 28, 2005.

In support of this Objection, the Plaintiff states there are genuine material issues in dispute from which the trier of fact can conclude that the Plaintiff's Due Process and Equal Protection rights were violated by the Defendants. The Plaintiff has submitted a Memorandum of Law in support of this Objection.

WHEREFORE, the Plaintiff requests that his Objection be sustained and the Defendants' Motion for Summary Judgment be denied.

Raymond T. Trebisacci (#2760)
Trebisacci, Hall & Associates
398 Liberty Street
Pawcatuck, CT 06379
401-596-3166
or 860-599-4000
Fax 860-599-8702

Dated December 15, 2005

**CERTFICATION**

I hereby certify that on December 15, 2005, I caused a copy of the within Objection to be mailed by first class mail, postage prepaid to George Rinaldi, Little, Medeiros, Kinder, Bulman & Whitney, 72 Pine St., Providence, RI 02903.

Raymond T. Trebisacci (2760)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**KENNETH A. OLSEN**
**Plaintiff**

**v.** **C.A. No: 03-245 ML**

**TOWN OF WESTERLY;**
**WESTERLY TOWN COUNCIL;**
**RICHARD COMOLLI, PATRICIA DOUGLAS, ANN SCHWER, DIANA AVEDISIAN, JAIME SILVESTRI, NANCY RICHMOND, MARY JANE DIMAIO, MELINDA BOEGLIN and ETSUKO ZUCZEK**
**Defendants**

**MEMORANDUM OF LAW**
**IN SUPPORT OF PLAINTIFF'S**
**OBJECTION TO MOTION FOR SUMMARY JUDGMENT**

## I. FACTS AND TRAVEL OF THE CASE

On May 14, 2003 Plaintiff filed a Complaint in Rhode Island Superior Court alleging that the Defendants violated his rights of Equal Protection and Due Process. Defendants promptly removed that case to this Federal District Court.

This case was brought because the Plaintiff had been denied a request for a one year continuation of service on the Westerly Police Department beyond his retirement.

Service on the Westerly Police force is governed by special legislation which states that

> Each officer who has served a continuous period of twenty-five years shall be retired, unless he requests permission to continue in service, in which case, the town council by affirmative vote may permit his continuation in service for term of one year. (Exhibit A)

Prior to Plaintiff's request, each officer that requested an extension

received it. Some officers received multiple extensions. (See Defendants' Exhibit 8) [1]

In considering Plaintiff's request, the Council Minutes show that Defendants heard from Plaintiff's direct supervisor, the Chief at that time, praising the Plaintiff. They also heard from then Town Manager Nolan who stated that she did no support the extension. The minutes do not state the reason Nolan did not support the extension. (See Defendants' Exhibit 1) In fact, Defendant Patricia Douglas stated in her deposition that Nolan would not give her reasons. (See Exhibit B Douglas Deposition p19-20)

## II. ARGUMENT

### A. Summary Judgment Should Not Be Granted If There is Substantial Evidence That Would Sustain a Reasonable Verdict

Summary judgment is a drastic remedy that should only be granted when there are no material issues. "Summary judgment will not lie if the dispute about a fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non moving party." Anderson v. Liberty Lobby, Inc., 447 U.S. 242 at 248-9, 106 S.Ct. 2505 at 2510 (1986). See also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 149-51, 120 S.Ct. 2097 at 2110-2 (2000).

In this case, the evidence is such that the trier of fact could reasonably return a finding that the Defendants violated Plaintiff's rights of Equal Protection and Due Process.

[1] Defendants' Statement of Undisputed Facts alleges that Chief James Gulluscio was denied his "first request" in 1981. That is not supported by any affidavit or evidence presented by Defendants. Indeed, their Exhibit 8, Affidavit of the Town's Human Resource Coordinator fails to mention any such denial.

B. There Is Sufficient Evidence To Support The Claim That Defendants Violated Plaintiff's Right To Equal Protection By Treating Him Differently Than Everybody Else

An Equal Protection claim is supported if it can be shown that the Plaintiff was 1) treated differently than 2) those similarly situated and 3) there is no rational reason for the different treatment. E.g. Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073 (2000). See also e.g. Batiste v. City of New Haven, 239 Fed.Sup.2d 213 (D. Conn. 2002)

Defense assertions to the contrary, the Plaintiff is in no way different than any of the other officers who were granted extensions. Simply put, there is no reason to treat him differently than the rest of the department. [2]

Likewise, it is hard to imagine that the reasons posited by the Defendants for denying Plaintiff's request did not exist when the other officers received their extensions. Certainly there were other officers in line to move up the chain of command in 1990 just as in 2000.

Further, it is no reason at all if the Town Manager didn't give her reasons for recommending that Plaintiff's extension be denied. Nolan's affidavit that her decision was based on some reprimand is a disingenuous attempt to bootstrap the defense argument that there was a rational basis for the denial. Indeed, there is not one Defendant who says that the reprimand played a role in their decision.

Weighing those reasons against the praises presented by his boss, a

[2] Even if we assume that Chief Gulluscio was denied his "first request" based on Defense logic that a chief is not similarly situated as a lieutenant then that Chief's denial becomes irrelevant to this case.

trier of fact could easily conclude that the Plaintiff was intentionally treated differently than the other officers for no good reason at all.

For this reason alone, the Motion for Summary Judgment should be denied.

C. <u>There Is Sufficient Evidence To Support The Claim That Defendants Violated Plaintiff's Right To Due Process By Failing To Tell Him The Reasons For The Denial And Allow Him To Defend Himself Against Those Reasons</u>

Defense correctly states that Due Process applies to those cases in which the government tries to take a property interest in which a person has a legitimate claim of entitlement. A claim of entitlement to continued employment can be established by a statute or past practices. <u>E.g.</u> <u>Board of Regents v. Roth</u>, 408 U.S. 564 at 577, 92 S.Ct. 2701 at 2709 (1972)

Thus in <u>Wilkinson v. State Crime Laboratory Commission</u>, 788 A.2d 1129 (R.I. 2002) a state crime lab employee was reinstated when his employment was not renewed without good cause.

Further, in Rhode Island, the Law Enforcement Officers' Bill of Rights guarantees people such as the Plaintiff a hearing after proper notice when an investigation of the officer results in "the recommendation of some action, such as demotion, transfer, dismissal, loss of pay, reassignment or similar action." <u>R.I.G.L.</u> Sec. 43-28.6-4.

In this case, Plaintiff's right to Due Process was not only protected by past practices of the town but also by statute. The fact that everyone else got

one or more extensions gives rise to a legitimate expectation that Plaintiff would get the extension also. That and the Law Enforcement Officers' Bill of Rights gave him the right to Due Process. The Plaintiff received no notice of why he was being denied and was deprived of any right to defend himself.

Therefore, based on the facts as applied to this law there is sufficient basis for a trier of fact to conclude that the Plaintiff's Due Process rights were violated and Defendants' Motion for Summary Judgment should be denied.

Raymond T. Trebisacci (#2760)
Trebisacci, Hall & Associates
398 Liberty Street
Pawcatuck, CT 06379
401-596-3166
or 860-599-4000
Fax 860-599-8702

Dated December 15, 2005

**CERTFICATION**

I hereby certify that on December 15, 2005, I caused a copy of the within Memorandum of Law to be mailed by first class mail, postage prepaid to George Rinaldi, Little, Medeiros, Kinder, Bulman & Whitney, 72 Pine St., Providence, RI 02903.

Raymond T. Trebisacci (2760)

**EXHIBIT A**

1943 P.L. Ch. 1298 § 6

CHAPTER 1298.

S 192
Approved
April 22, 1943.

AN ACT IN AMENDMENT OF SECTIONS 3, 5, 6 AND 7 OF CHAPTER 2594 OF THE PUBLIC LAWS, 1938, ENTITLED "AN ACT TO PROVIDE FOR THE RETIREMENT OF POLICE OFFICERS OF THE TOWN OF WESTERLY."

It is enacted by the General Assembly as follows:

SECTION 1. Sections 3, 5, 6 and 7 of chapter 2594 of the public laws, 1938, entitled "An act to provide for the retirement of police officers of the town of Westerly," are hereby amended to read as follows:

Investments.

"Sec. 3. It shall be the duty of the town treasurer, with the advice and consent of the town council of said town, to invest such portion of the amounts credited to the account as is not, in his judgment, required to meet current withdrawals, such investment shall be made in any securities in which the deposits in savings banks and participation deposits in banks and in trust companies may be legally invested, as provided by clause 1 of section 1 of chapter 139 of the general laws, as amended.

Pension eligibility requirements.

"Sec. 5. On and after March 1st, 1939, every qualified officer, as defined in section 1 of this act, who shall have served a continuous period of twenty-five years on the police force of the town of Westerly, shall be entitled to receive, until the time of his death, an annual retirement allowance of fifty per centum of his final annual compensation payable as nearly as practicable in equal monthly installments; provided, however, that in any case where such continuous period of service has been interrupted for cause deemed satisfactory to the town council and so certified by said town council to the town treasurer, said interrupted period of service for twenty-five years shall be recognized as though no interruption in consecutive order of years had occurred; provided, further, however, that he has contributed to the account, two percentum of his annual compensation for a period of not longer than twenty-five years.

Permission to remain in active service.

"Sec. 6. Each officer who has served a continuous period of twenty-five years shall be retired, unless he requests permission to continue in service, in which case, the town council by affirmative vote may permit his continuation in service for term of one year, at the end of which time, he shall be retired as though he had then served a continuous period of twenty-five years; provided, however, that the town council may be affirmative vote at the end of any such period again permit his continuation in service for a period of one year.

Medical examinations to determine disability.

"Sec. 7. Medical examination of an officer for ordinary disability shall be made by the town council, or upon the application of said officer or of a person acting in his behalf, stating that said officer is physically or mentally incapacitated for the performance of duty and that he should be

OCT-04-2000 09:46 WESTERLY TOWN MANAGER 1 401 348 0340 P.02/03

TOTAL P.03

JANUARY SESSION, 1943—CHAPTER 1298. (cont'd)

retired. Medical examination of said officer shall be made by three physicians engaged by the town council for this purpose and should such medical examination show that said officer is physically or mentally incapacitated for the performance of duty and should be retired, the physicians shall so report and certify to the town council and the town council shall retire the said police officer for ordinary disability forthwith.

Disability retirement.

"Upon retirement for ordinary disability an officer, beginning from the date of retirement and ending on his death, shall be entitled to receive an annual retirement allowance, payable as nearly as practicable in equal monthly installments, as follows:

"(a) If he shall have served ten years or less, ten per centum of his final annual compensation.

"(b) If he shall have served more than ten years, but not more than fifteen years, eighteen per centum of his final annual compensation.

"(c) If he shall have served more than fifteen years, but less than twenty years, twenty-seven per centum of his final annual compensation.

"(d) If he shall have served more than twenty years, but less than twenty-five years, thirty-seven per centum of his final annual compensation."

Act effective, when.

SEC. 2. This act shall take effect upon its passage and all acts and parts of acts inconsistent herewith are hereby repealed.

OCT-04-2000 09:47 WESTERLY TOWN MANAGER 1 401 348 0340 P.03/03

**EXHIBIT B**

**EXCERPT FROM DEPOSITION OF PATRICIA DOUGLAS**

feeling as to why -- as to the gr... ..ng of extensions?
A. It was my personal feeling that the department would be healthier if people moved up the ladder.
Q. How did you feel when prior requests for an extension came before the council and were granted?
THE WITNESS: How did I feel?
MR. TREBISACCI: Yes.
MR. RINALDI: Again, let me put an objection on relevance grounds on the record but you can answer the question.
(Pause)
MR. RINALDI: Do you remember the question?
THE WITNESS: No.
Q. Did you ever vote, prior to Ken Olsen coming and asking for a request for an extension did you ever vote against an extension that came before the council?
THE WITNESS: On anyone?
MR. TREBISACCI: Yes.
A. I may have.
Q. Okay. Is there something between the last person prior to Ken Olsen that came and requested an extension on the police department and this time when Ken Olsen came before the police department requesting



an extension, did your feeling, did your opinion about extensions change?
A. I don't know when the last person was or who the last person was or when it was so --
Q. Did you have a change --
A. You will have to refresh my memory.
Q. Well, in 1986 when you were first elected to the council what was your feeling on requests for extensions by members of the police department?
A. It depended on the situation in front of me.
Q. Okay. In 1987 what was your feeling about requests for extensions by the police department?
A. It depended on the situation in front of me.
Q. And I take it that's going to be your answer --
A. Yes, and it would be my answer today if I was sitting on the council.
Q. Okay, that's fine. Let me ask then why you felt that Ken Olsen should not be granted an extension.
A. Because the situation was the way it was and at that particular time I felt the officers who were requesting an extension in time should not be granted because I felt the department should move.
Q. And I need you to give me specifics.
A. One of them was the town manager, that I have



never heard a town manager in all those years ever say, and she was also public safety director, ever say that there are serious things in a file and I do not recommend the extension.
Q. And what serious things did the town manager refer to when she did not recommend the extension?
A. She did not say.
Q. And you took it on faith --
A. No.
Q. -- that because she said it --
A. She is the town manager and the public safety director and all we knew was that there were the complaints in the files and whatever they are called, reprimands or whatever were by the chief.
Q. Okay, and do you recall any specifics of what those reprimands were?
A. She did not say.
Q. Okay. Did you ask her what those specifics were?
A. Yes, I believe we did ask her and she was not comfortable with revealing things in the personnel file.
Q. So she didn't give any specifics?
A. The rumors were on the street.
Q. I'm sorry?



A. The rumors were on the street.
Q. Did Town Manager Nolan give any specifics --
A. No.
Q. -- as to what she was talking about?
A. No.
Q. She did not?
A. No.
Q. Did you ask her --
A. Yes, we asked.
Q. And did she respond to those questions?
A. By saying that she did not believe she could reveal things in a personnel file.
Q. What were the rumors that were on the street, ma'am?
A. I don't know, there is always rumors on streets.
Q. Well, it's something that struck a chord with you? What were the rumors specifically?
A. One of them was that he interfered with an investigation that involved family members.
Q. And when did that take place, ma'am?
A. I have no idea.
Q. Okay, and did you ever give Ken Olsen the opportunity to respond to that accusation?
A. He wanted me to call him up and say to him did